# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

September 28, 2022

**VIA ECF**

Magistrate Judge James M. Wicks
Eastern District of New York
100 Federal Plaza, Courtroom 1024
Central Islip, New York 11722

   **Re:** *Osorio Aguirre, et al. v. A & S Vegetables Inc., et al.*
      Civil Action No. 2:22-cv-00191 (JMA)(JMW)

Dear Magistrate Judge Wicks:

  This office represents plaintiffs Jose Fernando Osorio Aguirre, Selan Villanueva, Salvador Montoya Ramirez, Neri Palacios, and Jose Odin Canales Rodriguez ("Plaintiffs") in the above-referenced action. We write jointly with counsel for defendants A & S Vegetables Inc., JAR 259 Food Corp., Amandeep Singh, Narinder Singh Gahra, Kuljit Kaur (the "A & S Vegetables Defendants"), and Krishna Holding Inc. ("Krishna" and, together with the A & S Vegetables Defendants, the "Defendants") (Plaintiffs and Defendants are hereinafter referred to collectively as the "Parties") pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), and the Court's August 29, 2022 Order. Counsel for the Parties respectfully submit that the Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.[1]

**I. Procedural History and Plaintiffs' Allegations**

  Plaintiffs commenced this lawsuit by filing the Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on January 13, 2021. (Pelton Aff. ¶ 4; Dkt. No. 1 (the "Complaint")). The A & S Defendants filed their Answer to the Complaint on March 25, 2021. (Dkt. No. 14). Having not received a response to the Complaint from Krishna and Maharaja Asian Supermarket Inc., on May 2, 2021, Plaintiffs requested a certificate of default as to those defendants. (Pelton Aff. ¶ 6; Dkt. No. 17)[2]. Thereafter, on May 18, 2021, counsel for Krishna appeared in this action and Plaintiffs agreed to vacate the default against Krishna. (Pelton Aff. ¶

---

[1] Defendants have not yet signed the Settlement Agreement. The Parties will file the fully-executed agreement once they have it and therefore ask that the Court hold off on approving the settlement until all parties have signed.

[2] Defendant Maharaja Asian Supermarket Inc. never appeared in this action. Accordingly, pursuant to the Settlement Agreement (Ex. A § 4), simultaneously with this filing Plaintiffs are filing a Notice of Dismissal without Prejudice as to that entity.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

6; *see* Dkt. No. 21). Defendant Krishna filed an Answer to the Complaint on June 6, 2021. (Pelton Aff. ¶ 6; Dkt. No. 23).

On June 30, 2021, counsel for the Parties appeared for an initial telephonic status conference before Magistrate Judge Wicks, wherein they discussed interest in attempting an early resolution of Plaintiffs' claims, prior to engaging in costly protracted litigation. (Pelton Aff. ¶ 7). Accordingly, the Court entered a pre-mediation discovery schedule and referral to the EDNY Mediation Program. (*See* Dkt. Nos. 24, 25).

To aid in the Parties' settlement discussions, and pursuant to the Court's Order, on July 30, 2021, Plaintiffs exchanged with Defendants all documents in their possession relating to the claims asserted in the Complaint. (Pelton Aff. ¶ 8). Likewise, on August 17, 2021, Plaintiffs exchanged with Defendants Plaintiffs' Responses to the Court Interrogatories, as well as a damages computation spreadsheet. (*Id.*). On September 1, 2021, Plaintiffs provided an updated damages computation and Court Interrogatory responses for Plaintiff Neri Palacios. (*Id.*). Defendant Krishna represented that they did not have any documents to produce because it is their position that none of the Plaintiffs worked for that entity. (*Id.*). The A & S Defendants also did not produce any documents or information and, on September 13, 2021, counsel for the A & S Defendants advised of their intention to seek withdrawal as counsel. (*Id.*; Dkt. No. 27).

At the September 14, 2021 status conference, Magistrate Judge Wicks set a schedule for the A & S Defendants' counsel's motion to withdraw. (Pelton Aff. ¶ 9; *see* Dkt. No. 28). Counsel for the A & S Defendants' motion to withdraw was filed on October 8, 2021 and was granted without opposition on October 21, 2021. (Order Dated 10/21/2021). The Court held another status conference on November 29, 2021, wherein Plaintiffs' counsel advised the Court that Plaintiffs had received no discovery from Defendants and intended to make a motion to compel, and the Court scheduled a settlement conference for February 2, 2022. (Pelton Aff. ¶ 10; Dkt. No. 32). On December 16, 2021, the Court issued an Order to Show Cause regarding the A & S Vegetables Defendants' retention of new counsel. (Dkt. Entry Dated 12/16/2021). Magistrate Judge Wicks ordered that the A & S Vegetables Defendants show cause by December 28, 2021 as to why the Court should not recommend to District Judge Azrack that the Clerk enter default against the A & S Vegetables Defendants. (*Id.*). On December 23, 2021, new counsel appeared for the A & S Defendants. (Dkt. Nos. 34-36). The Court held a status conference on January 4, 2022, wherein Plaintiffs' counsel discussed the need for discovery from Defendants and the Parties agreed to seek referral once again to the EDNY Mediation Program. (Pelton Aff. ¶ 11; *see* Dkt. No. 37). Magistrate Judge Wicks once again referred the Parties to mediation and cancelled the settlement conference.

After several adjournments, the Parties attended a mediation session before James Brown, Esq. on May 26, 2022; however, the Parties were unable to reach a settlement on that day. (Pelton Aff. ¶ 12). To aid in further settlement negotiations, the Parties agreed that additional discovery was needed from Defendants concerning the finances of the A & S Defendants, as well as purported releases obtained by the A & S Defendants relating to a U.S. Department of Labor ("DOL") settlement. (*Id.*). Magistrate Judge Wicks held a status conference on June 29, 2022,

Magistrate Judge James M. Wicks
FLSA Settlement Fairness Letter
Page **3** of **7**

wherein the Parties discussed the additional discovery that was contemplated at the mediation and the Court scheduled an in-person settlement conference for August 30, 2022. (Dkt. No. 43).

Over the next several weeks, the A & S Defendants provided additional discovery and information to Plaintiffs and the Parties continued their settlement negotiations. Ultimately, on August 29, 2022, the Parties reached a settlement in principle, such that the settlement conference was no longer necessary. (*See* Dkt. No. 44). Thereafter, Plaintiffs' counsel drafted and exchanged a formal settlement agreement, the terms of which the Parties continued to negotiate over the next several weeks. (Pelton Aff. ¶ 14). The Parties ended up resolving the outstanding issues and agreed to the final Settlement Agreement and Release (the "Settlement Agreement") on or about September 22, 2022. (*Id.*). As set forth in the Settlement Agreement, the Agreement, as well as the settlement negotiations, were translated into Spanish for the Plaintiffs by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**. (*Id.* ¶ 15).

### II.     The *Wolinsky* Factors

Courts in this circuit have identified several factors for determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations omitted); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing the *Wolinsky* factors). These factors are discussed in turn.

#### A.     Plaintiffs' Range of Possible Recovery

As mentioned above, Plaintiffs prepared an damages analysis as part of their pre-mediation disclosures, relying upon the documents in their possession as well as their best recollections of hours worked and wages paid, particularly cash wages, where appropriate. (Pelton Aff. ¶ 8). Plaintiffs calculated a total of $530,907.86 in damages, including $211,209.63 in unpaid wages, $50,000.00 in wage notice and wage statement damages, $211,209.63 in liquidated damages, and $66,735.61 in prejudgment interest, minus $8,247.02 in payments from the DOL resolution, as of August 23, 2022, the date Plaintiffs exchanged their analysis with the Court in advance of the settlement conference. (*Id.*). Of these damages, $446,055.63 was attributable to the A & S Vegetables Defendants.

Although Plaintiffs' damages would be significantly lower if Plaintiffs utilized the time and payroll documents produced by the A & S Defendants and if they excluded the time period

covered by the DOL investigation and settlement, Plaintiffs position is that such documents are not reflective of the actual hours worked by Plaintiffs or the actual pay received by Plaintiffs for their work. For these reasons, Plaintiffs did not utilize the pay records in calculating their damages but recognize that their damages could be reduced if a trier of fact credited such records as being reflective of the hours worked or wages paid.

On the other hand, it is the Defendants position that all wages were paid to the Plaintiffs and that they are not liable for any unpaid wage claims because the payroll documents are reflective of the actual hours worked by the Plaintiffs and reflective of the actual wages that were paid to the Plaintiffs by the Defendants, and the wage notices produced were accurate and timely provided to the Plaintiffs. Defendants also take the position that the Plaintiffs who appear in the documents relating to the DOL investigation and settlement have released their claims for the entirety of the period covered by such investigation which constitutes a significant time period identified in the instant action.

### B.     Avoiding Anticipated Burdens and Expenses & Litigation Risks

The Parties have disputes as to the facts and merits of Plaintiffs' claims, Defendants' liability, and the accuracy of Defendants' records. Initially, the Parties dispute the accuracy of Defendants' time and pay records which, ultimately, would likely require a finder of fact to determine their accuracy and the credibility of the Parties for purposes of crediting Plaintiffs' best recollection as to the hours they worked and the wages they were paid compared to Defendants' records. Indeed, Plaintiffs acknowledge that Defendants changed their recordkeeping practices at some point during the relevant time period, likely as a result of the DOL investigation, but Plaintiffs allege that Defendants continued to pay a fixed weekly salary which did not compensate Plaintiffs at least minimum wage for all hours worked or overtime premiums for hours worked over 40 each week.

In contrast, the Defendants assert that their payroll systems are accurate and correct. As such, the hours worked by Plaintiffs and the wages they were paid are also accurate and correct. Thus, there is a clear dispute between the Plaintiffs and the Defendants with respect to the merits of the claims. Such dispute would most likely require extensive deposition discovery, motion practice, and possibly trial to decide.

In addition, Defendants assert that they paid in full the settlement to the DOL which covered the period November 26, 2016 through August 18, 2018, and which Defendants assert released the claims of Plaintiffs Neri Palacios and Selan Villanueva, whom were included in the DOL settlement. Plaintiffs take the position that such settlement was not in fact paid in full and, regardless, Plaintiffs did not execute a release or were ever informed about having released any of their claims.

Finally, the A & S Defendants allege significant financial constraints which would impact Plaintiffs' ability to collect a substantial judgment, if one were ultimately awarded to them. To that end, the A & S Defendants provided documentation regarding substantial judgments against

some of the individual defendants and corporate defendants one of which is in bankruptcy proceedings and one is not longer operational.

Given the substantial time and expense that would be needed to resolve these disputed issues, Plaintiffs prefer to settle now for an amount that they would be guaranteed to receive under the terms of the settlement. Accordingly, the Parties believe that the settlement amount of $40,000.00 is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding with litigation faced with Defendants' financial condition.

### C. Arm's-Length Bargaining & Possibility of Fraud or Collusion

Throughout the litigation, the settlement negotiations between counsel for the Parties has at all times been at arm's length. Indeed, the settlement was only reached after an exchange of relevant discovery and engaging in numerous settlement discussions with experienced counsel, including with the aid of an experienced wage and hour mediator from the EDNY Mediation Program. There is nothing to suggest that the terms of the Settlement Agreement were reached as a result of fraud or collusion.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $40,000.00 (the "Settlement Amount"), $32,500.00 of which is to be paid by the A & S Vegetables Defendants and $7,500.00 of which is to be paid by Krishna. Of the Settlement Amount, $14,343.33 is payable to Plaintiffs' counsel (consisting of $1,515.00 in expense reimbursements and $12,828.33 in attorneys' fees). The remaining $25,656.67 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision or any other restrictions on Plaintiffs' ability to discuss the terms of the settlement.

### IV. Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of September 28, 2022, Plaintiffs' counsel has spent more than 135 hours in prosecuting and settling this matter, resulting in a lodestar of $33,188.33. *See* Pelton Aff. Ex. C. Plaintiffs' counsel has spent $1,515.00 in actual litigation costs for the filing and service of the complaint, and mediation fees. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $12,828.33) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a substantially less than the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in his retainer agreement.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern and Southern Districts of New York. In fact, the same rates have been approved in connection with a recent wage and hour default judgment in this District. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district.").

Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

## V.     The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky,* 900 F. Supp. 2d at 335.  Generally, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).  In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354).  Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, as well as an exchange of damages, discovery and documents. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including disputed merits issues and Defendants' financial condition. Due to several disputed issues of fact, the Parties would likely need to engage in substantial discovery including depositions, as well as motion practice including collective and class certification and summary judgment, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*     *     *     *     *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The Parties believe that the settlement is fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

*/s/ Brent E. Pelton*

Brent E. Pelton, Esq. of
PELTON GRAHAM LLC

Enclosure

cc:   All counsel (via ECF)